

DEC 2 6 2006

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
                    DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD WEIMER,<br><br>        Plaintiff,<br><br>        v.<br><br>COUNTY OF KERN, et al.,<br><br>        Defendants. | 1:06-CV-00735 OWW DLB<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT GINDES' MOTION TO DISMISS |

## I.   INTRODUCTION

Plaintiff, Howard Wiemer, brings this civil rights action pursuant to 42 U.S.C. § 1983 and California law, alleging that he was wrongfully convicted and imprisoned for child molestation. Before the court for decision is Defendant Andrew Gindes' motion to dismiss the state law claims and motion for a more definite statement as to the entire complaint. (Doc. 16, filed Oct. 4, 2006.)  The County of Kern filed a statement of non-opposition to the motion.  (Doc. 20, filed Nov. 16, 2006.)  Plaintiff opposes, arguing that his claims under California law are sufficient to survive a motion to dismiss and that the complaint is sufficiently specific.  (Doc. 21, filed Nov. 17, 2006.) Defendant Gindes replied.  (Doc. 23, filed Nov. 27, 2006.)

1

## II.  BACKGROUND

2   In the summer of 1984, Charlene Ashcraft accused Plaintiff
3 of molesting her 23 years before, while she was a foster child in
4 his home.  (Compl. at ¶17.)  Thereafter, Kern County Child
5 Protective Services worker Barbara Jones and Kern County
6 Sheriff's Deputy Jack Rutledge conducted an investigation into
7 the allegations.  The investigation involved, among other things,
8 interviewing a number of other females who had previously resided
9 as foster children in the Weimer home.  (*Id.*)  Plaintiff alleges
10 that the investigators used improper, suggestive, and coercive
11 interview techniques when questioning Plaintiff's former foster
12 children. (*Id.* at ¶¶ 17-20.)

13   On September 10, 1984, Deputy Rutledge requested that the
14 Kern County District Attorney's Office file charges against Mr.
15 Weimer.  The next day, Deputy District Attorney Andrew Gindes
16 filed the charges by way of a criminal information.  (*Id.* at
17 ¶23.)  Plaintiff alleges that Gindes wrote on the Sheriff's
18 Department formal Complaint request: "LETS [sic] FIND OUT THE
19 REST OF THE CHILDREN PLACED IN THIS FOSTER HOME AND INTERVIEW
20 THEM—I BELIEVE WE WOULD FIND MORE VICTIMS—I CANNOT BELIEVE THE
21 DEFENDANT TOOK A TWENTY YEAR VACATION." (*Id.* (emphasis in
22 original).)  Plaintiff further alleges that:

23          [P]ursuant to this directive, the investigator
            defendants, defendant Gindes and other Kern County
24          employees did indeed interview numerous other minors
            who had been in foster care with the Weimers, without
25          properly recording or documenting or even logging these
            interviews. Plaintiff is also informed and believes and
26          on that basis asserts that in these interviews each of
            these minors denied being sexually molested in any
27          fashion while in the charge of the Weimers.

28                              ***

> Despite glaring contradictions in the statements of the alleged victims, despite the evidence of a propensity on the part of the child witnesses to make false accusations of sexual abuse, and despite the evidence of likely hysterical conversion arising from the sexual molestations that had originally brought the child witnesses into foster care, all of the defendants conspired with prosecutor Gindes, and [others], and pressured [child witnesses] to make statements consistent with their statements in the original reports.

(*Id.* at ¶¶ 23 & 26.)   Plaintiff maintains that the investigative practices utilized in his case followed a "pattern and practice prevalent in Kern County in 1984 of highly abusive methods and techniques in criminal investigation of suspected child molestation."   (*Id.* at ¶24.)

In 1985, following a state criminal trial conducted in Kern County, Plaintiff was convicted of child molestation.   (*Id.* at ¶3.)   Plaintiff was imprisoned until 1997.   (*Id.*)   In June 2004, his conviction was overturned on federal habeas corpus.   (*Id.*)

On June 9, 2006, Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983, various provisions of the California Constitution, and California Civil Code § 52.1(b), against the County of Kern, the Kern County Sheriff's Office, the Kern County Welfare Department, of which Child Protective Services is a part, Edward Lawrence Kleier (the Sheriff of Kern County from January 1983 to 1986), Bradford Darling (the Sergeant and Unit Supervisor in charge of the juvenile sex crimes unit of the Kern County Sheriff's Department), Jack Rutledge (a Deputy Sheriff who worked on the Weimer case), Edward Jagels (the District Attorney of Kern County from January 1983 to the present), Andrew Gindes (the Deputy District Attorney who filed the original information against Weimer), Carol Darling (the

3

1 | Sexual Abuse Program Coordinator with the Kern County District
2 | Attorney's Office from 1980 through 1987), Barbara Jones (a CPS
3 | case worker who worked on the Weimer case), and Irene Valos
4 | (another CPS case worker who worked on the Weimer case).   (Doc.
5 | 1.)

6 |     Defendants moved to recuse the undersigned district judge on
7 | August 18, 2006.  (Docs. 7, 11, & 15.)  That motion was denied.
8 | Carol Darling, Irene Valos, Barbara Jones, the County of Kern,
9 | the Kern County Sheriff's Office, the Kern County Welfare
10 | Department, Edward Kleier, Bradford Darling, Edward Jagels, and
11 | Jack Rutledge have answered the complaint.  (Docs. 9,  12 & 22.)
12 |     Andrew Gindes moves to dismiss the state law causes of
13 | action and for a more definite statement as to the
14 | § 1983 claims.  (Doc. 16, filed Oct. 4, 2006.)  The County does
15 | not oppose Gindes' motion.  (Doc. 20, Filed Nov. 17, 2006.)
16 | Plaintiff, however, has filed opposition.  (Doc. 21, filed Nov
17 | 17, 2006.)  Defendant Gindes replied.  (Doc. 23, filed Nov. 27m
18 | 2006.)

19 | **III.   STANDARDS OF REVIEW**
20 | **A.   Motion to Dismiss.**

21 |     A complaint may be dismissed for failure to state a claim
22 | pursuant to Federal Rule of Civil Procedure 12(b)(6) if it
23 | "appears beyond doubt that the non-movant can prove no set of
24 | facts to support its claims." *Simpson v. AOL Time Warner Inc.*,
25 | 452 F.3d 1040, 1046 (9th Cir. 2006).  Alternatively, dismissal
26 | can be based on the lack of a cognizable legal theory.  *SmileCare*
27 | *Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F3d 780, 783
28 | (9th Cir. 1996).  In evaluating such a motion "[a]ll allegations

4

1  and reasonable inferences are taken as true, and the allegations
2  are construed in the light most favorable to the non-moving
3  party, but conclusory allegations of law and unwarranted
4  inferences are insufficient to defeat a motion to dismiss."
5  *Simpson*, 452 F.3d at 1046.

6

7       **B.   Motion for a More Definite Statement.**

8       If a complaint "is so vague or ambiguous that a party cannot
9  reasonably be required to frame a responsive pleading, the party
10 may move for a more definite statement before interposing a
11 responsive pleading.  The motion shall point out the defects
12 complained of and the details desired."  Fed. R. Civ. P. 12(e).
13 A Rule 12(e) motion for a more definite statement must be
14 considered in light of the liberal pleading standards set forth
15 in Fed. R. Civ. P. 8(a)(2).  *See, e.g., Bureerong v. Uvawas*, 922
16 F. Supp 1450, 1461 (C.D. Cal. 1996) (citing *Sagan v. Apple*
17 *Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)
18 ("Motions for a more definite statement are viewed with disfavor
19 and are rarely granted because of the minimal pleading
20 requirements of the Federal Rules.")).  The Court must deny the
21 motion if the complaint is specific enough to notify defendant of
22 the substance of the claim being asserted.  *See Bureerong*, 922 F.
23 Supp. at 1461; *see also San Bernardino Pub. Employees Ass'n v.*
24 *Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a
25 more definite statement is used to attack unintelligibility, not
26 mere lack of detail....").  Whether to grant a Rule 12(e) motion
27 for a more definite statement lies within the discretion of the
28 district court.  *See Stout*, 946 F. Supp. at 804.

IV.   **DISCUSSION**

A.   **Motion to Dismiss**.

    1.   **California Civil Code § 52.1**.

    The sixth cause of action is brought under California Civil Code § 51.2(b), which permits an individual whose "exercise or enjoyment of rights secured by the...Constitution or laws of this state" has been interfered with by "threats, intimidation, or coercion" (or attempted threats, intimidation, or coercion) to bring a private right of action for damages.  That claim action alleges in its entirety:

    73.   Plaintiff realleges, and incorporates herein as if fully restated, the allegations of paragraphs 1 through 72 ante.

    74.   County, Rutledge, Jones, Valos, Gindes, Kleier, B. Darling, C. Darling and DOES 1 through 30, and each of them, interfered with, denied, aided or incited denial of Mr. Weimer's exercise or enjoyment of rights secured by the Constitution of the United States or of rights secured by the Constitution and laws of this State, including but not limited to Article I, §§ 1, 13, 15 and 17 of the California Constitution.

    75.   As a direct result of the aforesaid conduct of these defendants, and each of them, plaintiff did suffer great fear, hardship, loss of enjoyment of rights and other injuries when arrested, jailed, convicted and imprisoned for child molestation crimes he did not commit.

    76.   The aforesaid conduct of Rutledge, Jones, Valos, Gindes, Kleier, B. Darling, C. Darling and DOES 1 through 30 was malicious and oppressive, warranting the award of punitive damages against each of them.

(Compl. at ¶¶ 73-76.)

    Defendant argues that Plaintiff has failed to allege that Gindes interfered with Plaintiff's rights through threats, intimidation or coercion.  In response, Plaintiff points to

6

paragraphs 23, 24, 26, 37, 39 and 42 of the complaint. Defendant correctly points out, however, that paragraphs 24, 37 and 39 make no allegations regarding Gindes' conduct:

> 24. The investigation in Mr. Weimer's case followed a pattern and practice prevalent in Kern County in 1984 of highly abusive methods and techniques in criminal investigation of suspected child molestation. In other criminal cases investigated in Kern County during this period, the interviewers later claimed either that they had not taped any of the child interviews, or that if recorded they had erased the tape recordings, or that some interviews were not reported (particularly if the interviewers failed to obtain inculpatory statements). In this case, although the District Attorney's office requested interviews of all female Weimer foster children, neither the prosecutors in plaintiff's criminal case nor DOES 1 through 30 ever produced reports or tape recordings of other child interviews to Mr. Weimer's defense counsel.

> 37. Defendants Rutledge, Jones, Valos and other agents or employees of defendant COUNTY, including but not limited to DOES 1 through 30, and each of them, had statutory and constitutional duties to conduct the molestation investigations herein in a reasonable manner and to comply with these duties before depriving a citizen, such as Weimer, of his liberty. In violation of these duties, Rutledge, Jones and Valos used evidence-gathering criminal investigative methods which primarily consisted of unduly coercive, directive, and suggestive questioning of the alleged child victims, which they knew or should have known would result, and which did result, in these children giving false and fundamentally unreliable criminal trial testimony. Although these defendants, and each of them, knew or should have known that such testimony was false or fundamentally unreliable, they failed and refused to correct it and allowed it to become the basis for the jury's verdict against Weimer. Such false and unreliable testimony was a substantial factor in the wrongful conviction and wrongful imprisonment of plaintiff. The abusive and coercive interviewing tactics used by Rutledge, Jones and Valos resulted in the giving of criminal trial testimony against plaintiff so unreliable as to violate his rights to due process of law and a fair trial.

7

39.   By promising rewards, making threats, isolating the children, instructing the minors not to look at one or both of their foster parents in the courtroom, and hounding the children until they got the answers they wanted, Rutledge, Jones and Valos intimidated and coerced Dena and Myra to make false accusations, and to give false criminal trial testimony, against Weimer. Among other things, Rutledge, Jones and Valos intimidated and threatened the suspected child victims by telling them, in words to the effect that Weimer was a bad man who hurt children and who needed to be imprisoned and that the investigators already knew the truth about molestations from other children and needed confirmation.

The remaining paragraphs cited by Plaintiffs do mention Gindes, but do not assert that he directly intimidated, threatened, or coerced witnesses:

23.   On September 10, 1984, Rutledge requested that the Kern County District Attorney's office file criminal charges against Mr. Weimer. Deputy District Attorney Andrew Gindes wrote on the Sheriff's Department Formal Complaint request: "LETS [sic] FIND OUT THE REST OF THE CHILDREN PLACED IN THIS FOSTER HOME AND INTERVIEW THEM—I BELIEVE WE WOULD FIND MORE VICTIMS—I CANNOT BELIEVE THE DEFENDANT TOOK A TWENTY YEAR VACATION." [Emphasis in original.] <u>Plaintiff is informed and believes and on that basis asserts that pursuant to this directive, the investigator defendants, defendant Gindes and other Kern County employees did indeed interview numerous other minors who had been in foster care with the Weimers, without properly recording or documenting or even logging these interviews</u>. Plaintiff is also informed and believes and on that basis asserts that in these interviews each of these minors denied being sexually molested in any fashion while in the charge of the Weimers.

26.   Despite glaring contradictions in the statements of the alleged victims, despite the evidence of a propensity on the part of the child witnesses to make false accusations of sexual abuse, and despite the evidence of likely hysterical conversion arising from the sexual molestations that had originally brought the child witnesses into foster care, <u>all of the defendants conspired with prosecutor Gindes, and DOES 1 through 30, and pressured Dena and Myra to make statements</u>

8

<u>consistent with their statements in the original reports.</u> Such behavior was part of the concerted effort of Kern County District Attorney Edward Jagels to obtain convictions at all costs and by whatever means necessary, and in particular by testimony which the defendants knew or should have known was false and constitutionally unreliable. As a direct and proximate result of this conduct, Mr. Weimer was convicted of felony child molestation and was sentenced to 42 years in prison.

42. The combined effect of Rutledge's Jones' and Valos' fabrication of evidence against Weimer, and of their suppression of material exculpatory evidence, was to frame Weimer for crimes he did not commit in violation of his constitutional rights. Defendants Kleier, B. Darling, KCWD, Jagels, Gindes, C. Darling, and DOES 11-20, either knowingly or with deliberate or reckless indifference, facilitated or acquiesced in or condoned or ratified the aforesaid misconduct engaged in by Rutledge, Jones and Valos and others under their direction or control. The aforesaid conduct was part of an official policy, custom, practice or pattern of conduct of defendant County, directly causing the deprivation of plaintiff's federal constitutional rights, very substantially injuring plaintiff.

In response, Plaintiff argues that "the complaint alleges that defendant Gindes set in motion, and participated in, a concerted effort to find foster children who had lived in the Weimer home, and to generate evidence against Mr. Weimer through unlawfully coercive interviews with those children." (Doc. 21 at 4.)  In addition, Plaintiff asserts that "Mr. Gindes conspired with other defendants and aided and abetted them to pressure, intimidate and coerce Dena Wisdom and Myra Kimes to give testimony which the defendants knew or should have known was false and constitutionally unreliable... and otherwise to use evidence-gathering criminal investigative methods which primarily consisted of unduly coercive, directive, and suggestive questioning of the alleged child victims." (*Id.* at 5.)

9

Plaintiff suggests that Gindes' participation in a "conspiracy" is enough to state a claim under § 52.1, citing *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). But, *Jones* does not stand for such a proposition. Rather, *Jones* recognized that, although usually only the government or its agents can violate a plaintiff's constitutional rights, a private actor could be held liable under § 52.1 if the private actor indirectly interfered with the plaintiff's constitutional rights by coercive action:

> We recognize that because section 52.1 proscribes attempted or completed interferences with rights secured by law, it may provide a cause of action based on such rights when a private actor interferes with them or attempts to do so by coercion, even if the wrongdoer could not violate them directly. For example, if a burglary victim, suspecting that his stolen property lay hidden in a nearby house, stood at the door with the police and threatened to injure the homeowner if she did not change her mind and consent to an official and warrantless search of her premises, the homeowner might, under section 52.1, be able to sue her neighbor for interfering with her Fourth Amendment rights, assuming for purposes of this example that the Fourth Amendment protected her against warrantless searches by the state without her consent under the circumstances. For another example, the right to vote ( Burdick v. Takushi (1992) 504 U.S. 428, 441 [112 S.Ct. 2059, 2067, 119 L.Ed.2d 245]) includes a right to vote, under the Fifteenth, Nineteenth and Twenty-fourth Amendments to the United States Constitution, free of certain burdens ( Ex parte Yarbrough (1884) 110 U.S. 651, 664-665 [4 S.Ct. 152, 158-159, 28 L.Ed. 274]; Williams v. Rhodes (1968) 393 U.S. 23, 29 [89 S.Ct. 5, 9-10, 21 L.Ed.2d 24]). To the extent that the right to vote is guaranteed by the federal Constitution, or by other "laws" (§ 52.1), a private actor's coercive attempted or completed interference with it might be actionable under section 52.1.

*Id.* Critically, the hypothetical private actor described in this passage from *Jones* did utilize intimidation and threats to indirectly interfere with the plaintiffs' constitutional rights. This holding simply does not apply to the circumstances of this case. Here, the complaint fails to allege that Defendant Gindes

10

1   used any coercive tactics to obtain Weimer's conviction.
2   Plaintiff presents no authority suggesting that it is sufficient
3   for Gindes to conspire with other who in turn use coercive
4   tactics.

5       The California Civil Code § 52.1 claim against Defendant
6   Gindes is **DISMISSED WITH LEAVE TO AMEND**.

7           **2.   California Constitutional Claims.**

8       The fifth cause of action is a supplemental state law claim
9   that alleges all defendants violated various provisions of the
10  California Constitution.  Specifically, Plaintiff alleges that
11  Defendants, including Defendant Gindes, violated his rights under
12  Article I, sections 1 (the right to enjoy and defend life and
13  liberty and to pursue and obtain safety, happiness and privacy),
14  13 (the right to be secure in one's person, house, papers, and
15  effects against unreasonable seizures), 15 (the right not to be
16  deprived of life, liberty, or property without due process of
17  law), and 17 (the right not to be subjected to cruel or unusual
18  punishment) of the California Constitution.  (Compl. at ¶¶ 68-
19  72.)

20      Gindes cites *Katzberg v. Regents of the University of*
21  *California*, 29 Cal. 4th 300, 303 (2002), for the proposition that
22  Plaintiff is precluded from bringing a damages action under any
23  of these constitutional provisions.  In *Katzberg*, the California
24  Supreme Court held that a plaintiff could not maintain a damages
25  action directly under Article I, § 7 of the California
26  Constitution (due process and equal protection).  *Katzberg* first
27  examined whether there was evidence within the "language and
28  history of the constitutional provision at issue, including

                                  11

whether it contains guidelines, mechanisms, or procedures
implying a monetary remedy, as well as any pertinent common law
history" indicating an affirmative intent either to authorize or
withhold a damages action to remedy a violation.  *Id.* at 317.
Finding no such evidence, the court next examined whether
"meaningful alternative remedies" were available to redress the
plaintiff's grievances.  *Id.* at 328.

> [I]nstead of attempting to proceed against defendants
> by asserting an action for damages, plaintiff could
> have sought to remedy the alleged violation of his due
> process liberty interest and his concomitant right to a
> "name-clearing hearing" by seeking a writ of mandate
> under Code of Civil Procedure section 1085, compelling
> defendants to provide a name-clearing hearing.

> In addition, plaintiff had an adequate remedy for the
> alleged delay in offering an adequate "name-clearing
> hearing," by way of a defamation action. As the Regents
> observe, "because a plaintiff who timely sues for
> defamation may obtain damages for reputational injury,
> such damages are an adequate remedy for any actionable
> 'delay' in providing a name-clearing hearing-whose sole
> purpose is to protect the plaintiff's reputation.

*Id.* at 326-27.  The *Katzberg* court held that the "availability of
these adequate alternative remedies militates against judicial
creation of a tort cause of action for damages in the
circumstances presented.  *Id.* at 327.  *See also City of Simi
Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1085 (2003)
(relying on *Katzberg* to bar damages claim under Article I,
section 7).

Here, Defendant Gindes asserts generally that Plaintiff's
Article I, § 13 claim (violation of the right to be secure in
one's person, house, papers, and effects against unreasonable
seizures) is barred by *Katzberg* because "alternative statutory
and/or common law causes of action are available to redress his

1   grievances."   (Doc. 16 at 3.)   Gindes does not cite any statutory
2   provisions or caselaw that might provide such an alternative
3   remedy.   Instead, Gindes cites *Rendon v. City of Fresno*, 2005
4   U.S. Dist. Lexis 31623, 2005 WL 3144144 (E.D. Cal. 2005).   In
5   *Rendon*, the district court applied *Katzberg* to bar a claim under
6   Article I, § 13, reasoning that California Civil Code § 52.1
7   provided an alternative remedy.   As discussed above, California
8   Civil Code § 52.1, provides that any individual whose exercise or
9   enjoyment of rights secured by the Constitution or laws of
10  California has been interfered with by "threats, intimidation, or
11  coercion," may institute a civil action to redress any such
12  grievance.

13         Gindes also argues that the claims brought under Article I,
14  sections 1, 15 and 17 are similarly barred by the reasoning of
15  *Katzberg* because (1) there are alternative statutory or common
16  law remedies, (2) there is no evidence of any intent in the
17  language of these sections to authorize a damages action, and (3)
18  there are no "guidelines, mechanisms, or procedures" that would
19  infer the availability of a damages action.   Gindes offers no
20  additional legal authority in support of this argument, nor does
21  he present an analysis of the Constitutional text or legislative
22  history.

23         In response, Plaintiff suggests that an action for damages
24  is permitted where the state constitution is tied to a common law
25  or statutory action, such as false arrest or false imprisonment.
26  (Doc. 21 at 3.)   In support of this proposition, Plaintiff cites
27  a footnote 1 from *Katzberg*, which disclaims:

28

                                    **13**

> We do not here consider the propriety of actions such
> as those based upon grounds established under common
> law tort principles-for example, actions for false
> arrest, false imprisonment, wrongful termination based
> upon violation of public policy, or the like. In such
> actions, a breach of duty or violation of public policy
> may be established by demonstrating a violation of a
> constitutional provision, and damages properly may be
> awarded to remedy the tort. We consider here only
> whether an action for damages is available to remedy a
> constitutional violation that is not tied to an
> established common law or statutory action.

29 Cal. 4th at 304 n1.  This disclaimer, however, does not stand

for the proposition that a damages action is in fact permitted

where a constitutional violation is "tied" to a common law tort.

Plaintiff cites no other cases that support his argument.

Rather, it explains that the *Katzberg* court left such issues

undecided.

The weight of authority is on Defendant Gindes' side.

Although *Katzberg* concerned only Article I, section 7, the

reasoning of that case has been applied to other provisions of

the California Constitution.  *See Degrassi v. Cook*, 29 Cal. 4th

333, 335 (2002) (following *Katzberg* to hold no damages action is

available under Article I, § 2, because that provision does not

contain guidelines, mechanisms, or procedures from which a

damages remedy might be inferred, and meaningful alternative

remedies for violation of free speech rights were available in

the form of mandamus relief or an injunction under the Ralph M.

Brown Act).  Several unpublished cases have applied *Katzberg* to

bar damages actions brought under two of the Constitutional

provisions cited by Plaintiff: sections 13 and 15.  *Rendon v.*

*City of Fresno*, 2005 U.S. Dist. Lexis 31623, 2005 WL 3144144

(E.D. Cal. 2005) (following *Katzberg* to find no damages action

14

available under Article I, § 13 in part because an alternative remedy is available under Cal. Civil. Code. § 52.1); *Reinhardt v. Santa Clara County*, 2006 WL 662741 (N.D. Cal.)(no damages action available under Article I, § 15 because the provision does not manifest an intent to include a damages remedy and because there are alternative forms of relief by way of habeas corpus and Cal. Civil Code § 52.1); *Walker v. County of Santa Clara*, 2005 WL 2437037 (N.D. Cal.) (same).[1]

The remaining constitutional provisions cited by Plaintiff, Article I, § 17 (the right not to be subjected to cruel or unusual punishment) and § 1 (the right to enjoy and defend life and liberty and to pursue and obtain safety, happiness and privacy), appear not to have been the subject of any post-*Katzberg* judicial rulings.  Nothing in the text of § 17 suggests damages action should be available under the *Katzberg* analysis. The text of § 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  The text of § 17 provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed."  Neither provision discloses an intent either to authorize or to withhold a damages remedy.  As in *Katzberg* and *Degrassi*, neither provision contains guidelines, mechanisms, or

---

[1]     In fact, apart from claims for inverse condemnation brought under Article I, § 19 of the California Constitution, no cases could be located which approve of direct damages actions under any other provision of the California Constitution.

15

procedures from which a damages remedy might be inferred. Moreover, meaningful alternative forms of relief are available. Here, as Plaintiff has successfully demonstrated, a sentence may be challenged by way of a petition for habeas corpus. Alternatively, a damages remedy may be available under California Civil Code § 52.1.

During oral argument, Plaintiff essentially conceded that damages were not available under the cited provisions of the California Constitution.  However, Plaintiff requests that he be permitted to re-plead his claims as requests for declaratory "name clearing" relief.

Accordingly, Plaintiff's prayers for damages in connection with his claims under the California Constitution are **STRICKEN**. These claims may be re-pled as claims for declaratory relief only in an amendment to the complaint.

### B.    Motion for a More Definite Statement.

#### 1.    Gindes' Argument Re: Statute of Limitations.

Defendant initially argued that the complaint does not provide sufficient detail to permit him to calculate the expiration of the statute of limitations.   (Doc. 16 at 4.) Gindes has since withdrawn this argument, acknowledging that the complaint does contain sufficient information on this issue. (Doc. 23 at 4.)

#### 2.    First and Second Causes of Action.

Defendant Gindes complains that the § 1983 claims in the complaint do not specify the federal constitutional rights

16

alleged to have been violated.  Gindes acknowledges that the complaint "makes a general reference to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments at paragraph 16," but points out that "the actual causes of action make no reference as to which of these amendments might apply to that specific cause of action."  (Doc. 16 at 5.)  In addition, Gindes complains that "there is no reference as to which facts, if any, support which alleged constitutional violation."  (Id.)

The relevant question here is whether the complaint gives defendant sufficient notice of the claims.  "A court will deny [a motion for a more definite statement" where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted."  Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005).

> A motion for a more definite statement is proper only
> where the complaint is "so vague or ambiguous that the
> opposing party cannot respond, even with a simple
> denial, in good faith or without prejudice to himself.

Id.

Here, the complaint puts Defendant Gindes on sufficient notice of the nature of the federal constitutional claims.  The first cause of action, entitled "fabricating evidence and framing Weimer" describes a pattern and practice of using "abusive inducement and intimidation tactics and other coercive interviewing methods..." which led to false accusations against Weimer and eventually to his wrongful conviction.  (Compl. at ¶¶ 38-43.)  Under Federal Rule of Civil Procedure 8, a complaint is not required to cite legal authority or to detail the nature of the legal theories underlying every claim.  Nevertheless, any

17

party with a general understanding of civil rights law in this circuit would recognize that the first cause of action invokes the protections set forth in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), which held that the deliberate falsification of evidence violates due process.

The second cause of action, entitled "failure to gather, preserve and/or disclose material exculpatory evidence" alleges, among other things, a pattern and practice of "deliberate[], consious[], and [] bad faith fail[ure] and refus[al] to document or otherwise memorialize [a] compelling body of materially exculpatory evidence or to produce it in Mr. Weimer's criminal trial." (*Id.* at ¶47.) Again, although the complaint does not cite (and is not required to cite) any legal authority, this allegation clearly invokes *Brady v. Maryland*, 373 U.S. 83 (1963).[2]  The complaint puts Defendant on sufficient notice of the nature and extent of the alleged constitutional violations. He should have no difficulty framing a responsive pleading.

Defendant Gindes' motion for a more definite statement is **DENIED**.

### V.   CONCLUSION

For the reasons set forth above,

> (1)   Defendant Gindes' Motion to dismiss the California
>        Civil Code § 52.1 is **GRANTED WITH LEAVE TO AMEND**;
> (2)   Plaintiff's prayers for damages in connection with

---

[2]     By providing these examples of possible legal theories upon which Plaintiff's federal constitutional claims might rest, the district court does not mean to imply that these are the only legitimate legal theories presented by the complaint.

18

1    his claims under the California Constitution are

2    **STRICKEN** and these claims may be maintained as

3    claims for declaratory relief only;

4        (3)   Defendant Gindes' motion for a more definite

5        statement is **DENIED**.

6

7    DATED: December 22, 2006.

8

9        _____

10       Oliver W. Wanger
         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28